## T. R. Kelley, Appellee, v. George W. Martin, Appellant.

ACCORD AND SATISFACTION—*how must be established.* An accord and satisfaction where relied upon must be established by a preponderance of the evidence.

Assumpsit. Appeal from the City Court of Marion; the Hon. W. W. CLEMENS, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912.

SAWYER & KIMMEL, for appellant.

W. W. SKAGGS and D. T. HARTWELL, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal from a judgment of the city court of Marion in a suit brought by appellee, a real estate agent, to recover a balance claimed to be due him as commissions for the sale of 183 acres of land placed in his hands for sale by appellant.

The cause was tried by the court without a jury and resulted in a finding and judgment in favor of appellee for $207.50. There was no controversy as to the employment of appellee nor that he sold the premises for a satisfactory price. It was claimed however by appel-

lant that at the time he placed the land in the hands of appellee for sale it was agreed between them that appellee would sell the same for him for a commission of $250, while on the other hand, appellee claims that appellant told him if he would take the land and sell it for him, he would pay full commission for it or all that appellee got for the same, over $60 an acre, and that he hoped appellee would make a thousand dollars. It was shown that by "full commission" was meant five per cent of the selling price. Appellee procured a purchaser for the premises, one Samuel Stearns, and after some negotiations, agreed to sell the same to him for $62.50 an acre. Stearns, appellee and appellant then went to the office of an attorney who prepared a bond for a deed. Stearns made out his check for $1000 and gave it to appellant and the latter was about to sign the bond when he asked appellee how much commission he owed him and a controversy over the amount arose between them. Appellee insisted that he was entitled under his contract to a full commission of five per cent upon the price the land sold for. Appellant refused to pay this amount but offered to pay appellee $200 for commissions which offer he afterwards increased to $250.

Appellee refused to accept the amount offered and thereupon appellant returned the $1000 check to Stearns and the trade was abandoned. About a week later, with no further or different agreement concerning the commissions, appellant, as he testified, met appellee and said to him "We had just as well go ahead with the trade," and also saw Mr. Stearns and said to him "I guess we had just as well go ahead with the trade as I would have to pay Kelley anyway." Appellee's testimony is that appellant at this time said he wanted to make the trade "just like it was." Appellee accordingly got into communication with Stearns and the trade was consummated. The same check for $1000

which had been formerly made out by Stearns was given to appellant who, in company with Stearns and appellee, took it to the First National Bank of Marion where appellant presented it to the assistant cashier and told him to place $750 to his credit and make out a check for $250 in favor of appellee for his commission. Appellee thereupon said that was not all appellant owed him; that he owed him a full commission of five per cent; that he would not accept the check for $250 except part payment, to which appellant replied, that if appellee accepted it at all, he must accept it in full payment of all he owed him. Thereupon both appellant and appellee left the bank without having come to any agreement, appellant however leaving the check with the assistant cashier.

The court below could not, in our opinion from the evidence, do otherwise than find that there was a contract for commissions between the parties as claimed by appellee. When appellee undertook to sell a second time, it must have been on his own terms, as he had yielded nothing. Appellant however relies upon an accord and satisfaction based on what he claims was an acceptance of the check by appellee after the two had left the bank.

Upon the question as to what took place at the time of the claimed acceptance of the check, there is only the testimony of appellee and the assistant cashier.

Appellee testified that he went back to the bank later and found that the cashier had given him credit for the $250, but that appellant still owed him a balance of $321.85. The assistant cashier, Mr. Campbell, testified that after appellant left the bank he asked the cashier what to do with the check and he said "Give Mr. Kelley credit for it;" that Mr. Kelley was present when he was given credit for the check but whether or not Kelley heard the direction of the cashier, witness did not state.

Witness further stated: "Mr. Martin did not tell me not to let Mr. Kelley have the check unless in full payment; he told me that that was all he owed Kelley and if Kelley got any more it would be at the end of a law suit. He did not tell me not to pay this $250 to Kelley unless Kelley accepted it in full payment. He did not say that in substance."

There being no controversy as to what took place in reference to the crediting of the check to appellee, it might well be that the question of accord and satisfaction should be considered a legal proposition and as there were no propositions of law presented to the court, the question was not preserved for determination by us; but, waiving this question, it was necessary for appellant, in order to sustain his claim of accord and satisfaction that he prove the same by a preponderance of the evidence and this it appears to us he failed to do.

The claim of appellee on the trial was that he was entitled to five per cent commission on the sale, which would amount to $571.85. As against this amount he gave credit for the amount of the check, $250, and claimed there was still $321.85 due him.

Appellee stated however that in his conversation with appellant, the latter said he would pay him the full commission or all that he would get over $60 per acre. There were 183 acres and the land sold for $62.50 per acre, which would be $2.50 per acre in excess of the amount named, and would make the total commissions figured on that basis, amount to $457.50. If from the total commission there be deducted the $250 check, there remains $207.50 which is the amount for which the court below gave judgment. While the evidence would have supported the judgment for the greater commission, there was no error, of which appellant can take advantage, in the giving of judgment against him for the lesser amount. The judgment of the court below will be affirmed.

*Affirmed.*